**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MATTHEW ALEXANDER O'NEILL,

*Plaintiff,*

v.

Case No. 25-1208-EFM-BGS

ROSE HILL POLICE DEPARTMENT, et al.,

*Defendants.*

**MEMORANDUM AND ORDER**

Pro se Plaintiff Matthew Alexander O'Neill, a self-described homeless vagabond, brings suit against Defendants the Rose Hill Police Department ("RHPD"), RHPD Officer Zachary Hobson, and RHPD Officer Thomas Maloney. Plaintiff's eight Counts arise out of his May 7, 2025, arrest for possession of drug paraphernalia. Defendants move to dismiss all of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). RHPD asserts that it is not a suable entity. Officers Hobson and Maloney assert qualified immunity as to Plaintiff's federal claims. And all Defendants assert that the Court lacks jurisdiction over Plaintiff's state law claims. For the reasons stated herein, the Court grants Defendants' motion.

## I.    Factual and Procedural Background[1]

Plaintiff is a homeless vagabond. He filed this action to seek justice for his beloved but now-departed pet, Kitty Sanchez. On May 7, 2025, after an exhausting day of working to fund veterinary care for Kitty Sanchez, Plaintiff arrived at a veterinary clinic in Rose Hill, Kansas.

---

[1] The facts are taken from Plaintiff's Complaint and are considered true for purposes of this Order.

After leaving Kitty Sanchez for examination at the clinic, Plaintiff went to a nearby gas station to purchase milk and use the restroom. After returning to the clinic, Plaintiff waited for a call from the veterinarian.[2] While waiting, he became disoriented and tired from his night of work, and he fell into an "exhaustive slumber."

Plaintiff was awakened by RHPD Officers "peering into his belongings." Based upon their observations, the Officers initiated a search of Plaintiff's belongings.[3] During the search, the Officers detained Plaintiff approximately ten yards from his belongings and bombarded him with questions. The Officers discovered and seized what Plaintiff describes as a "religious altar." The Officers describe it as drug paraphernalia. No matter the description, the Officers seized several Delta-9 THC and "HHC Hemp" vapes. Plaintiff attempted to explain that the items were for hemp use, and that they were lawful. The Officers were dismissive of Plaintiff's explanations. Eventually, the Officers arrested Plaintiff. Plaintiff identifies Officer Hobson as the arresting officer and Officer Maloney as the "Hypeman" Officer. Plaintiff was eventually charged and convicted of possession/use of drug paraphernalia in the municipal court of Rose Hill.

After Plaintiff was released from custody, Plaintiff returned to the veterinarian's clinic to pick up Kitty Sanchez. Sadly, Plaintiff discovered that Kitty Sanchez had been euthanized.

Plaintiff's suit is comprised of eight Counts. Counts I–VI allege various constitutional violations based upon the search, seizure, and arrest. Count VII–VIII are state law claims for negligence and defamation. Defendants filed the present Motion to Dismiss in September 2025. Initially, Plaintiff did not respond but sought leave to file a Response out of time; the Court granted

---

[2] Although not entirely clear from Plaintiff's description, the Court infers that Plaintiff remained in his car outside the clinic.

[3] Again, although unclear, the Court infers that Plaintiff was in his car and the officers observed these items in Plaintiff's car.

Plaintiff's request. Defendants filed a Reply and this matter is fully briefed and ripe for the Court's ruling.

Subsequent to Defendant's Reply, Plaintiff again filed a Motion for Leave to File Objection out of Time (Doc. 17). This document is identical to his Response to Defendant's Motion to Dismiss. Because all the matters in Plaintiff's second Motion are contained in his Response, the Court denies Plaintiff's second Motion as moot.

## II.    Legal Standard

### A.    Pro se Complaints

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[4] A pro se litigant is entitled to a liberal construction of his pleadings.[5] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[6] However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[7] As it relates to motions to dismiss generally, the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[8] "Well-pleaded"

---

[4] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[5] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[6] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[7] *Id.*

[8] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

allegations are those that are facially plausible such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## B.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[10] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[13] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[14] But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15]

## C.    Qualified Immunity

Officers Hobson and Maloney assert qualified immunity as a defense to Plaintiff's claims. Public officers enjoy a qualified immunity to suit under § 1983 unless their conduct was

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] Fed. R. Civ. P. 12(b)(6).

[11] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Iqbal*, 556 at 678.

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[14] *Iqbal*, 556 U.S. at 678–79.

[15] *Id.* at 663.

unreasonable in light of clearly established law.[16] "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."[17] Having asserted qualified immunity, the burden is on Plaintiff to prove (1) the Officers violated a federal constitutional or statutory right, and (2) that the right was clearly established at the time of the unlawful conduct.[18] A right is "clearly established" if Supreme Court or Tenth Circuit precedent (or the weight of authority from other circuits) would put reasonable officers in the defendants' position on notice they were violating the Constitution.[19] The law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[20] This does not require the existence of a case exactly on point,[21] but does require that the existing caselaw be sufficiently clear to place the constitutional issue "beyond debate."[22] "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[23]

The Court has discretion to determine the order in which these requirements—violation of a right or whether that right was clearly established—are addressed;[24] immunity exists if either

---

[16] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citations omitted).

[17] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

[18] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[19] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017).

[20] *Mullenix*, 577 U.S. at 11 (citation omitted).

[21] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[22] *White v. Pauly*, 580 U.S. 73, 79 (2017).

[23] *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[24] *Pearson*, 555 U.S. at 236.

element is absent.[25] "On a motion to dismiss based on qualified immunity, the ultimate question is 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct.'"[26]

### III.    Analysis

### A.    RHPD is not a Suable Entity

RHPD moves to dismiss the claims against it under Rule 12(b)(6) asserting that it is not a suable entity. Indeed, "a police department of a city[] 'is not a separate suable entity.'"[27] "Rather, it is a 'subunit' of the city and, as such is not amenable to being sued."[28] Plaintiff fails to provide any substantive response to RHPD's argument that it cannot be sued. Because RHPD is a subunit of the city of Rose Hill, it is not a proper party and must be dismissed from this suit.

### B.    Officers Hobson and Maloney

As an initial matter, Defendants Hobson and Maloney argue that Plaintiff has not pled facts specific to them as individual Defendants. Rather, they assert that Plaintiff relies on collective allegations unspecific to either of them as individuals. A complaint must give fair notice of the claims, which means that "the complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations."[29]

---

[25] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

[26] *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)).

[27] *Wood v. Wichita Police Dep't*, 2025 WL 2306213, at *4 (D. Kan. Aug. 11, 2025) (quoting *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985)).

[28] *Id.* (citing *Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997)).

[29] *Robbins*, 519 F.3d at 1250 (emphases in original).

Here, Plaintiff does not refer to Officer Hobson or Officer Maloney in his factual recitation of his Counts, rather he refers to "law enforcement" or "the officers" throughout. But he does name Officer Hobson as the "Arresting Officer" and Officer Maloney as the "Hypeman Officer." Construing Plaintiff's Complaint liberally, the Court finds Plaintiff has given sufficient notice to Officers Hobson and Maloney that Plaintiff is referring to them as "law enforcement" and the "officers" throughout his Complaint. Doing so, the Court will address Officers Hobson and Maloney's qualified immunity defense to each of Plaintiff's Counts.

### 1. Count I: Unlawful Seizure of Religious Property

Plaintiff's Count I appears to be two claims wrapped in one. He alleges that law enforcement officers violated his Fourth Amendment right by searching and seizing a "religious altar" without probable cause or a warrant. He also alleges that the seizure of the religious altar violated his First Amendment right to religious expression and practice. Officers Hobson and Maloney assert qualified immunity protects them from these claims. The Court need only address the first prong of the qualified immunity analysis for each claim.

#### a. Fourth Amendment Claim

At the first step of the qualified immunity analysis, Plaintiff has the burden to show the Officers violated his federal constitutional or statutory right. Here, Plaintiff fails to state a plausible claim that the officers violated his Fourth Amendment right.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[30] Generally, where a person has a reasonable expectation of privacy in an object or place, a Government search or

---

[30] U.S. Const. amend. IV.

seizure of that object or place must be conducted pursuant to warrant based upon probable cause.[31]

However, there are a few specifically-established, well-delineated exceptions.[32] One exception is

contained in the plain view doctrine.

> The plain view doctrine allows an officer to seize evidence of a crime without obtaining a warrant if (1) the officer was lawfully in a position from which the object seized was in plain view; (2) the object's incriminating character was immediately apparent; and (3) the officer had a lawful right of access to the object.[33]

Although Plaintiff's Complaint does not make his location clear at the time the Officers

first encountered him, the most favorable reading of his Complaint would place him in his car in

the parking lot of a veterinarian clinic. The Court arrives at this conclusion based upon two

statements from his Complaint. First, he describes himself as a "homeless vagabond" and says that

he fell into an exhausted slumber after he returned to the veterinarian clinic from a gas station.

Second, he says he was awakened by officers "peering into his belongings" and that they later

"breached" his door and entered "the premises." Accordingly, the Court infers that Plaintiff was

in his car, which he refers to as "the premises," parked in the parking lot of the veterinarian clinic

when the Officers approached him. The Officers assert that the plain view doctrine applies to their

search of Plaintiff's vehicle.

Plaintiff's description of Officers "peering into" his belongings in his car at a veterinary

clinic and initiating a search based upon their observations fits into this exception. The Fourth

Amendment does not prohibit law enforcement from looking into Plaintiff's vehicle while it was

parked at the veterinarian's office. And when the officers observed contraband, it was within their

---

[31] *See United States v. Hay*, 95 F.4th 1304, 1313 (10th Cir. 2024).

[32] *Id.*

[33] *United States v. Ockert*, 2018 WL 3633893, at *5 (D. Kan. July 31, 2018), *aff'd*, 829 F. App'x 338 (10th Cir. 2020) (citations and quotations omitted).

authority to seize that contraband without a warrant. Accordingly, Plaintiff has not made out a Fourth Amendment violation when the Officers initiated a search and seizure of his belongings based upon their observations while peering into Plaintiff's belongings.

   b. First Amendment Claim

  Plaintiff also fails to make out a claim for the violation of his First Amendment rights. The Court considers Plaintiff's allegation to be one alleging a violation of his right to free exercise of his religious beliefs. "The Free Exercise Clause of the First Amendment guarantees absolute constitutional protection of religious belief, but only qualified protection of religious conduct."[34] "[T]he Free Exercise Clause of the First Amendment does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law incidentally affects religious practice."[35] The drug paraphernalia law pursuant to which the Officers seized Plaintiff's "religious altar" (i.e. hemp vapes and Delta-8 THC) is just such a law— it is religiously neutral and generally applicable in its prohibition of drugs and their accessories. Plaintiff does not make a substantive response to the Officers' argument here. Accordingly, Plaintiff cannot make out a Free Exercise violation based upon the facts he alleges.

  Because Plaintiff has not made claims that amount to violations of his First and Fourth Amendment rights, the Court need not address prong two of the qualified immunity analysis, as Plaintiff cannot overcome the Officers' assertion of qualified immunity on Count I at prong one.

  *2. Count II: Unlawful Search and Seizure*

  Plaintiff's second Count overlaps with the allegations listed in Count I. But in Count II he adds that the Officers violated his Fourth Amendment right when they "peer[ed] into his

---

[34] *McBride v. Shawnee Cnty., Kan. Ct. Servs.*, 71 F. Supp. 2d 1098, 1100 (D. Kan. 1999) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940)).

[35] *United States v. Meyers*, 95 F.3d 1475, 1481 (10th Cir. 1996).

belongings" without consent or a warrant and "breached Plaintiff's door and entered the premises without a warrant or exigent circumstances." The Officers assert that the plain view doctrine and the automobile exception apply to their warrantless search.

Law enforcement may search a vehicle pursuant to the recognized automobile exception.[36] "Under this exception, 'police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.'"[37] And "[t]he plain view doctrine and automobile exception have been used in combination to uphold warrantless vehicle searches."[38]

As discussed above, the plain view doctrine applied to the Officer's observation of contraband. This gave them the authority to initiate a search without a warrant. Under that authority, breaching Plaintiff's door and entering the premises to conduct that search did not amount to a violation of Plaintiff's Fourth Amendment rights. Plaintiff makes no substantive response to these arguments. Because Plaintiff has not made out a breach of his Fourth Amendment right in Count II, he cannot overcome the Officers' assertion of qualified immunity.

### 3. Count III: Unlawful Detainment

Plaintiff's third Count alleges that the Officers violated his Fourth and Fifth Amendment rights when they unlawfully detained him and used coercive interrogation tactics. He states that during the search the Officers bombarded him with incriminating questions and dismissed his attempts to explain that the items they found were for hemp use. The Officers assert that their detainment and questioning of Plaintiff constituted a *Terry* stop.

---

[36] *Ockert*, 2018 WL 3633893, at *5.

[37] *Id.* (quoting *United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009)).

[38] *Id.* (citations and quotations omitted).

"In *Terry v. Ohio,* the Supreme Court established that a law enforcement officer 'may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to arrest.'"[39] "Under *Terry* and its progeny, officers may conduct an investigatory detention without violating a person's Fourth Amendment rights if they possess 'a reasonable suspicion a person has or is committing a crime.'"[40]

Here, as discussed above, pursuant to the plain view doctrine, the Officers had more than reasonable suspicion—they had probable cause to search Plaintiff's belongings. Their investigatory detention of Plaintiff while the search was ongoing constituted a valid *Terry* stop. Plaintiff makes no substantive response to the Officer's contention. Accordingly, Plaintiff cannot make out a Fourth or Fifth Amendment violation in Count III.

### 4. Count IV: Unlawful Arrest

In Count IV, Plaintiff alleges that the officers lacked probable cause to arrest him in violation of his Fourth Amendment rights, arguing that the "drug paraphernalia" that he possessed was actually legal under Kansas law. The Officers assert that because Plaintiff was subsequently convicted for possession of drug paraphernalia, their arrest for this crime was valid.

Indeed if a plaintiff "is convicted in the criminal trial for the acts for which he was arrested, probable cause for his arrest is conclusively established and precludes a subsequent civil action for false arrest."[41] The Court takes judicial notice of Plaintiff's documented conviction for

---

[39] *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)).

[40] *Meadows v. City of Vill.*, 2022 WL 3153656, at *2 (10th Cir. 2022) (quoting *McHugh*, 639 F.3d at 1255)).

[41] *Gouskos v. Griffith*, 122 F. App'x 965, 972 (10th Cir. 2005) (citing *Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992)).

possession/use of drug paraphernalia attached to Defendants' Motion as Exhibit A.[42] Plaintiff makes no substantive response to the Officers' argument. Because Plaintiff was convicted of the crime for which the Officers arrested him, the Court finds that Plaintiff cannot show that the Officers violated his Fourth Amendment right, failing prong one of the qualified immunity analysis. Accordingly, the Officers are entitled to qualified immunity on Count IV.

### 5. Count V: Denial of Free Speech

Plaintiff's fifth Count alleges that law enforcement violated his First Amendment right to free speech when they interrupted and dismissed his statements as he tried to explain the nature of the items that the Officers found and seized. The Officers argue that their conduct does not amount to a First Amendment violation, and Plaintiff cannot overcome their assertion of qualified immunity.

To establish a First Amendment retaliation claim, a plaintiff must show that "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused his injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct."[43]

Plaintiff does not assert that he was prevented from speaking—merely that he was ignored and dismissed. The First Amendment does not require that a person's speech be received in the way he expects it to be received.[44] Ignoring or dismissing Plaintiff's speech is not the sort of action

---

[42] The Court may take judicial notice of public records without converting the motion for summary judgment. *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017).

[43] *Nielander v. Bd. of Cnty. Comm'rs of Cnty. Of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009).

[44] *See Washington v. Finlay*, 664 F.2d 913, 928 (4th Cir. 1981) ("The carefully guarded right to expression does not carry with it any right to be listened to, believed or supported in one's views.").

expected to chill a person of ordinary firmness from continuing to speak.[45] Because Plaintiff has not shown that the Officers violated his First Amendment right by causing an injury that chilled his exercise of free speech, he cannot overcome their assertion of qualified immunity. Accordingly, the Officers are entitled to qualified immunity on Count V.

### 6. Count VI: Interference with Pet Custody

In Count VI, Plaintiff alleges that law enforcement interfered with his right to custody and control over Kitty Sanchez. Specifically, Plaintiff alleges that, because he was unlawfully arrested, he was not able to retrieve Kitty Sanchez in time to prevent the veterinarian clinic from euthanizing his pet. Liberally construing Plaintiff's Complaint, the most recognizable constitutional violation here is a deprivation of Plaintiff's property without due process under the Fourteenth Amendment. The Court will analyze Plaintiff's claim accordingly.

Here, the Officers' actions of which Plaintiff complains occurred before trial and are characterized as a pre-trial deprivation of a property right. A pre-trial deprivation of a property right premised upon an unlawful arrest is at root a Fourth Amendment violation and should be analyzed thereunder.[46] As discussed in Plaintiff's unlawful arrest claim, Plaintiff's arrest cannot be considered unlawful because it resulted in his conviction. Plaintiff makes no substantive response to the arguments here. The Court finds that Plaintiff has not made out a constitutional violation in his interference with pet custody claim. Accordingly, the Officers are entitled to qualified immunity on Count VI.

---

[45] *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1095 (10th Cir. 2006) (noting that "'chilling effect' cases most often involve speech deterred by the threat of criminal or civil liability").

[46] *Bowling v. U.S.*, 2009 WL 723226, at *11 (D. Kan. Mar. 17, 2009) (citing *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007)).

**C.      The Court Lacks Jurisdiction over Plaintiff's State Law Claims**

Under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject-matter jurisdiction.[47] Federal courts are courts of limited jurisdiction, and a presumption exists against exercising jurisdiction over a case.[48] The party asserting jurisdiction bears the burden of establishing its existence.[49] Thus, the Court may exercise jurisdiction only when specifically authorized to do so and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction.[50] The party asserting jurisdiction has the burden of establishing subject matter jurisdiction.[51]

The Officers contend that the Court lacks jurisdiction over Counts VII–VIII, which are Plaintiff's state law claims for negligence and defamation. The Officers maintain that Plaintiff did not give adequate notice of these claims before filing as required by K.S.A. 12-105b(d). That statute requires that "any person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act " to file a "written notice" with the municipality before bringing suit against the municipality or its employees.[52] "It is a longstanding rule that filing a proper notice of a claim is a prerequisite to filing an action with the district court against a county or other municipality."[53]

---

[47] Fed. R. Civ. P. 12(b)(1).

[48] *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (citations omitted).

[49] *Id.*

[50] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

[51] *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

[52] K.S.A. § 12-105b(d).

[53] *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 280 Kan. 869, 127 P.3d 319, 325 (2006).

Here, the Officers have provided an affidavit from the City Clerk for Rose Hill indicating that Plaintiff has not provided any notice of claims as required by the statute.[54] Plaintiff makes no substantive response to the affidavit or the Officers' argument. Because filing notice with the City is a condition precedent to the Court's exercise of jurisdiction over these claims,[55] and the Officers have shown that Plaintiff has not filed the notice, Plaintiff's state law claims against the Officers must be dismissed.

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss (Doc. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Objection Out of Time (Doc. 17) is **DENIED as moot**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 17th day of July 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[54] The Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)" without needing to convert the motion to one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

[55] *Sleeth v. Sedan City Hosp.*, 298 Kan. 853, 317 P.3d 782, 785 (2014).